No. 29,841.

ARTHUR DURST, *Appellee,* v. H. P. WAREHAM and THE CITY OF MANHATTAN, *Appellants.*

(297 Pac. 675.)

Opinion filed April 11, 1931.

R. P. Evans, George Clammer, Charles Hughes, Walter Reed Gage, all of Manhattan, James V. Humphrey and A. S. Humphrey, both of Junction City, for the appellants.

C. Vincent Jones, of Clay Center, Ira C. Snyder, Hal E. Harlan and A. M. Johnston, all of Manhattan, for the appellee.

The opinion of the court was delivered by

SMITH, J.: The action was brought against H. P. Wareham and the city of Manhattan to recover damages caused when the roof of a shed maintained by Wareham collapsed upon plaintiff, injuring him. Plaintiff recovered against both defendants, and both appealed.

Appellant Wareham owned the hotel in Manhattan. In the rear of this hotel is an alley. This alley runs east and west through the entire block. On the north side of this alley, directly opposite the rear of the hotel, Wareham has built and maintains a garage. Just east of the garage there is a driveway, which was used during the process of the building of the hotel and the garage. This driveway is about twelve feet wide. Just east of this driveway there was an old shed, the collapse of which caused the injury. This shed was what was left of an old stone barn. At one time all four of its walls had been made of stone. The west wall had been removed about ten years before and the south wall about three years before the injury. At the time the injury sued for occurred, the south side of the shed, which was on the alley line, was open with no doors or barricades whatever. The west side was also open. There was nothing to support the roof on either the west or the south side. The west portion of this shed had a concrete slab for a floor, which extended east to within about two or three feet of the east end of the shed and west to the garage. This slab was about three or four inches above the level of the alley. Up to about a year before the injury the only support of the southwest corner of the roof had been a post, which stood just about on the alley line. About a year before the injury this post was removed and another was set thirty-six inches in from and north of the alley line. This post was a four by four with a two by four spiked up and down its north side. Both timbers reached from the concrete base to the roof and the four by four extended upward on the south side of the two by eight

rafter of the roof. Several spikes were driven through this rafter into the four by four. The two by four was cut so that the rafter rested upon it. From a point approximately twenty inches below the top of this post a brace ran from the north side of the two by four up and eastward and was spiked also to the north side of the post. From about the same place on the west side of the post a brace extended up and to the northward and was spiked to the plate. The east edge of the roof was spiked to a two by eight plate which was bolted clear through the stone wall. The bottom of this post rested upon the concrete slab and was not fastened or braced in any way. At a point eleven feet north of the alley line and supporting the roof were four two by fours, which remained in place after the removal of the remainder of a partition formerly dividing this portion of the shed into two rooms.

The alley on the day of the injury was covered with snow and ice to a depth of several inches. The top of this snow and ice was about level with the top of the concrete slab, and the place where the concrete slab raised above the alley line was not visible.

Appellee had been employed for about two months as an assistant cook at the Wareham hotel. On the day of the injury he entered the alley from the west on his motor cycle with side car attached. He rode east past the back door of the hotel and past the shed. When he had gone east a short way he thought of a message he wanted to give the cook at the hotel. He turned around and started back. As he turned, his motor cycle caught on an automobile that was standing in the alley. He put his feet down on the ground and pulled it back. He then went on west at the rate of four or five miles an hour. When he reached a point in the alley directly opposite to the post the front wheel dropped into a hole or rut, the rear wheel slipped around and the motor cycle headed directly for the post, striking it, knocking it from under the roof, and letting the roof fall upon appellee, causing him serious injuries. Appellee brought suit against the city and Mr. Wareham and recovered damages. The defendants appealed. The amount of the damages and the extent of the injuries are not questioned.

Appellee contends that the negligence of defendant Wareham consisted of not fastening or bracing this post at the bottom and that this negligence was the proximate cause of his injury. He predicates his claim that the city is liable upon the duty of the city to see that its highways are always in a safe condition for travelers.

Appellant Wareham contends that the proximate cause of the in-

jury was appellee's loss of control of his motor cycle; that the injury was not within the reasonable bounds of anticipation of defendant; that appellee was at the time of the accident a trespasser on appellant's property, and that no negligence whatever on the part of appellant was proved.

The city contends that the special findings of the jury, which will be noticed later, entitled it to a judgment and that if it was not entitled to this, then if judgment was rendered against the city that it should recite that appellant Wareham is primarily and the city secondarily liable.

We will examine the claims of appellant Wareham.

As to the contention that no negligence on his part was shown: Negligence is a breach of some duty. What was the duty that defendant Wareham owed to travelers in the alley? The jury in answer to special questions found that the post in question rested upon the top of the cement slab and was not fastened or braced in any way at the bottom, and that it should have been braced or fastened at the bottom in order to be a safe and proper protection to travelers using the alley. It also found that the post was put in place in that manner with the knowledge and consent of Wareham. 45 C. J., at page 859, lays down the rule as follows:

"The owner of property abutting on, or adjacent to, a highway, owes a duty to the public to exercise reasonable care to prevent injury to passers-by from its defective or dangerous condition; and if he fails to do so, and thereby renders the highway unsafe for travel, he makes himself liable although the consequent injury is received upon his own land and not on the highway."

The case cited in support of the above rule is *Ruocco v. United Advertising Corporation*, 98 Conn. 241. The syllabus in that case is:

"As a general rule the owner of property owes no duty to trespassers to keep his premises in a safe condition for their use. But an abutting owner is bound to exercise reasonable care to keep his premises in such a condition as not to endanger travelers in their lawful use of the highway; and if he fails to do so and thereby renders the highway unsafe for travel, he becomes liable, although the consequent injury is received upon his own land and not on the highway.

"This rule is one of public necessity, since the maintenance on private property of a menace dangerous to public travel is a nuisance, which casts upon the owner of the property the obligation to use due care."

That case is also reported in 30 A. L. R. 1237. A note to the above case gives a reference to a notation as to the general rule in

14 A. L. R. 1397, where a splendid discussion of the rule in various states is given. This notation refers to a case decided by this court, being *Bennett v. Bank,* 100 Kan. 90, 163 Pac. 625. In that case the defendant maintained a stairway adjacent to a sidewalk. This stairway was not safeguarded in any way. Plaintiff left the sidewalk and started to lean up against the wall of the bank to arrange her clothing. She fell into the stairway and was injured. This court held defendant liable and said:

"The landowner cannot escape liability for creating such a nuisance on the specious plea that the injured person was a trespasser on his premises, because the traveler inadvertently left the highway and in ~falling came up on the premises of the owner." (p. 92.)

The decision quotes *Earl v. Dlask,* 126 Ia. 361, 364, as follows:

"Even an excavation entirely outside the street line, but so near thereto as to endanger the traveling public, is held to be a nuisance, and the continuance or maintenance thereof actionable."

Wareham contends that the rules and cases cited above do not apply in the instant case because Durst was a trespasser. The jury, however, in answers to three or four special questions, found that Durst was on Wareham's land, not of his own volition but on account of having lost control of his machine, due to the icy condition of the street; that the post, the striking of which brought the roof down upon appellee, was only three feet from the alley line, and that the motor cycle was going at the rate of only three or four miles an hour. It is not the closeness of the pitfall or dangerous structure to the highway that renders the landowner liable; rather it is the danger that the structure affords to travelers upon the highway. Under the circumstances detailed above, we conclude the findings, as heretofore detailed by the jury, establish sufficient negligence on the part of Wareham to render him liable for the maintenance of the structure if other elements of liability exist, and that these findings were amply sustained by the evidence.

Wareham urges that the answers to certain questions entitle him to judgment notwithstanding the general verdict.

These answers find generally that striking a hole or rut in the alley paving caused appellee's motor cycle to slide and strike the post; that the injury would not have occurred had it not been for the hole; that the post was about twelve feet distant from the hole and three feet from the alley line; and that on account of snow and ice appellee lost control of his machine, and having lost control of the motor cycle caused it to leave the alley and strike the post. Ware-

ham claims that by these answers the jury found that his negligence as to the post was not the proximate cause of the injury, but that the proximate cause was the ice and snow in the alley, and that the injury was not such a result as a reasonable and prudent man should have anticipated and foreseen was likely to happen to some person in the lawful and ordinary use of the alley. In *Lincoln Township v. Koenig*, 10 Kan. App. 504, 63 Pac. 90, the court of appeals held:

"When two causes combine to produce an injury to a traveler upon a highway, both of which are in their nature proximate, the one being a culpable defect in the highway and the other some occurrence for which neither party is responsible, the municipality is liable, provided the injury would not have been sustained but for such defect." (Syl. ¶ 2.)

In *Clark v. Powder Co.*, 94 Kan. 268, 146 Pac. 320, this court discussed and reviewed the authorities on the question. There an employee of a powder company had left a can of solidified glycerine near an oil well, which he had been shooting. An employee of the contractor, for whom the powder company had been shooting the oil well, had picked up this can and hid it in an old cemetery. There it was found by the son of plaintiff, who played with it and caused it to explode, injuring him. The powder company contended that while it was negligent in leaving the glycerine lying around, still this negligence was not the proximate cause of the injury, but that the act of the employee of the contractor in putting the explosive where the boys found it intervened between the negligence of the powder company and the injury, so that his acts were the proximate cause. The court after a discussion of many authorities said:

"Running through all the precedents in analogous cases the test appears to be: Is the injury or damage the natural and probable consequence of the original negligence? The mere intrusion of an intervening agency does not always excuse the original wrongdoer (citing *Stone v. Boston & Albany Railroad*, 171 Mass. 536, 51 N. E. 1.)" (p. 272.)

The court held that the entire question was one of fact for the jury, following *Railway Co. v. Parry*, 67 Kan. 515, 73 Pac. 105, and *Filson v. Express Co.*, 84 Kan. 614, 114 Pac. 588, 863.

In *Walmsley v. Telephone Association*, 102 Kan. 139, 169 Pac. 197, the court had before it a case where a low-hanging telephone wire had dragged a stock tank off a hayrack, thereby knocking the plaintiff off the hayrack and causing a gun, which he was carrying, to go off and shoot him. It was said:

"But the law does not say that if the particular injury arising from the negligence cannot be anticipated a recovery cannot be had; that some injury

would probably arise from the existing negligence and that it could reasonably have been expected is all that the law requires to justify a recovery." (p. 143.)

In the instant case the question is, Would an ordinarily prudent man anticipate that some injury might result from the negligent manner in which the post in question was erected? This post was within three feet of the line of a busy alley. An ordinarily prudent man would know that in such an alley, with traffic or motor vehicles what they are to-day, that any unwary motorist or truck driver might back his vehicle in order to turn around or might swerve in order to avoid a collision with another vehicle or might be hit by another vehicle and thrown or pushed out of the alley, and would thereby enter the shed, hit the post, knock it down and bring the roof down upon him.

This sounds like speculation, but with all those things which we can see might have happened, how can it be said that the question of whether or not an ordinarily prudent man would have anticipated that some injury might follow from the negligent construction of the post was not a question for the jury? Let us see what the jury said.

Answer No. 18 was as follows:

"Q. Was the shed in question so constructed in regard to distance from the alley and means of support that an ordinarily prudent and careful person would have no reason to apprehend that it would be a source of danger to one traveling along the alley in question in an ordinarily careful and prudent manner? A. Yes."

Answer No. 25 was as follows:

"Q. Was said building so obviously dangerous to persons traveling on said alley that its dangerousness in this regard should have been observed by officers of the city in charge of streets and alleys in the making of ordinary and reasonable inspection of said alley? A. Yes."

Appellant Wareham urges that by answer 18 the jury in effect answered the question we have just been discussing in the negative; that such an answer is inconsistent with the general verdict, and on that account judgment should have been for Wareham and the city on the action for judgment on the answers to special questions notwithstanding the general verdict. If this answer stood alone there would be considerable merit to this contention. We must examine all the answers together, however, and by the great weight of authority we are bound to harmonize answers to special questions and general verdicts whenever possible. (*Moore v. Connelly,* 119 Kan. 35, 237 Pac. 900, and cases there cited.)

The jury in the instant case by the answers have described the injury and circumstances surrounding it in detail. Every answer to special questions made by it is in harmony with the general verdict, with the possible exception of 18. The inquiry we must answer is, What did the jury believe the state of facts to be? If we can say after an examination of the answers to all the special questions that the jury believed the post was negligently erected and that an ordinarily prudent man would anticipate that some injury might occur on account of it, then the general verdict must stand. With this rule in mind we conclude that what the jury had in mind when it answered question 18 was whether this shed was in such a condition that a traveler in the alley would be guilty of contributory negligence simply by traveling down the alley past it, and when question 25 was answered the jury was thinking of the city's liability. In answering that question, though, they found a state of facts which in effect answers the questions as to whether an ordinarily prudent man would anticipate that some injury was likely to happen on account of the negligent construction of the shed in question. Since all these things are true, we conclude that the demurrer of Wareham to the evidence of appellee, his motion for a judgment on the special findings and his motion for a new trial were rightfully overruled and, as to appellant Wareham, the judgment of the lower court is affirmed.

As to the liability of the city, a different question is presented. The judgment is based on the theory that the city owed a duty to travelers on its streets to make an inspection of the private premises on each side for the purpose of ascertaining whether there was anything on these premises which might render the streets dangerous to the traveler thereon. This is not the rule. In order for the city to be liable, it must have had notice, either actual or constructive, of the dangerous condition. (43 C. J. 992.) The jury did not find, nor does it appear in the record, that such a notice was ever had by the city. It follows that the judgment against the city was erroneous and must be reversed, while the judgment as to Wareham is affirmed.

Johnston, C. J., not sitting.

Sloan, J., not participating.

Harvey, J. (dissenting in part): I agree the city should not be held liable, but dissent from that portion of the opinion holding the lot owner, Wareham, liable.