424 P.2d 159

**Aurora P. VIGIL, Appellant,**

v.

**Dr. Jack J. HERMAN, Appellee.**

No. 8165.

Supreme Court of Arizona.

In Division.

Feb. 23, 1967.

32

O'Reilly, Pollock, Murphy & Pizzo, Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Phoenix, for appellee.

UDALL, Justice.

Aurora P. Vigil, plaintiff below, brings this appeal from the trial court's granting of a directed verdict in favor of the defendant, Doctor Jack J. Herman.

Commencing in about September of 1957 and continuing through September of 1960 the plaintiff consulted with and was treated generally by the defendant in his capacity as a general medical practitioner.

In April, 1962, plaintiff commenced this suit, alleging that due to defendant's failure to properly examine, diagnose, treat, prescribe or advise plaintiff, a tubercular condition from which she suffered was permitted to reach an advanced stage.

At the close of all the evidence the defendant was granted a directed verdict. The trial judge indicated that the verdict was granted for the following three reasons, stated by the defendant in his motion:

(1) The plaintiff failed to sustain the burden of proof in proving the medical standard in the community.

(2) The plaintiff failed to show proximate cause between the alleged malpractice and the injury allegedly resulting therefrom.

(3) Plaintiff failed generally to prove the material allegations of her complaint.

On this appeal plaintiff presents nine assignments of error, supported by ten propositions of law. It is necessary for us to consider only the points raised by assignments number 6 and 7, and to some extent, by numbers 8 and 9. The gist of plaintiff's claim in these assignments is that the medical standard in the community was properly established, that proximate cause was shown, and that plaintiff had established her case sufficiently to withstand a motion for directed verdict and to have the case submitted to the jury.

In order to establish the standard of medical practice, and thus to show what defendant should have, but allegedly did not do, plaintiff offered the following testimony of Dr. Clifford E. Ernst.

(*NOTE*: The basic facts of this case are hypothetically recited in the quotation. In a later part of this opinion the facts will be indiccated in greater detail, as necessary):

"Q. Doctor, I want you to assume a set of facts concerning a patient, and based upon those facts I will ask you questions.

Assume a female Spanish-American patient 24 years of age. She has had in her family home as a child some 10 to 14 years earlier a sister who has had thoracoplasty because of tuberculosis, a niece who has had a pulmonary resection because of pulmonary tuberculosis, a brother-in-law who has died because of pulmonary tuberculosis, a personal history which shows an illness three months long or longer in which the patient believe to have been tuberculosis.

Your records show that on November 16th, 1957, recent chest x-ray, 'normal'.

On May 11th, 1959 patient reports fainting at work.

On May 13th, 1959 patient reports malaise, fatigue, poor appetite.

May 19th a tubercular skin test is taken, and you treat the patient with vitamin injection.

May 21st the tuberculin skin test is read to the patient as three plus positive.

June 13th, 1959 x-ray report by the radiologist, Dr. Kennedy, reads:

'This individual will have to be observed very carefully for there is a good possibility that this represents a smouldering minimal tuberculosis lesion which we did not detect on the wet films.'

June 16th, cocci test and complement fixation test are taken, that is, the blood for one and the test administered for the other.

June 18th and June 23rd sputum is sent to the State Laboratory.

Now, subsequently, you have received the report back that the Valley Fever Skin test was negative and the complement fixation test of Valley Fever is negative.

At this point, Doctor, would the standard of practice in the community of Phoenix have required a general practitioner to follow and to continue to follow the symptoms of the patient?

"A. Yes.

"Q. And, doctor, assume the further added fact:

That on July 10th, the patient submits to a gastric washing which washing is reported on the 24th and 31st of August, 1959 as negative by smear and negative by culture.

Would the standard of practice in the community have required a general practitioner to continue to follow the symptoms of the patient?

"A. Yes.

"Q. Would the standard of practice have required the general practitioner to do further work-up such as lab studies? By that I mean x-ray, sputum, gastric washing.

"A. Yes.

"Q. And by following the symptoms, Doctor, does that include following the symptoms of fatigue, malaise, loss of appetite, loss of weight, fever and fluctuation of temperature? Does it include those things?

"A. All these factors have to be taken into consideration."

 In addition to the above testimony, on the issue of standard of practice much of the testimony of the defendant is pertinent, and in view of our decision in Stallcup v. Coscarart, 79 Ariz. 42, 282 P.2d 791, it is not open to question that the standard in the community may be established by defendant's testimony. In this respect, Dr. Herman testified (a) as to what the standard of practice required generally of a general practitioner, and (b) as to what he actually did or *would have done*, if he had had an opportunity. We emphasize the words "would have done" because it is defendant's contention that plaintiff's uncooperativeness prevented him from doing the general "work-up" which he allegedly would have performed if the plaintiff had cooperated. Defendant's claim that the plaintiff did not cooperate has no bearing on the sufficiency of plaintiff's attempt to establish the standard of practice in the community, for regardless of her attitude in this respect, a matter which we will fully consider later in this opinion, the fact remains that both Dr. Ernst and the defendant testified as to what the standard of practice required, and the defendant testified in great detail concerning what he actually did or allegedly would have done. In view of the abundance of testimony on this issue, we find no merit in defendant's claim that the standard was not shown sufficiently so as to provide the jury with a standard by which to measure the defendant's conduct.

It follows that the trial court erred when it found that the standard of medical practice in the community was not adequately established by the plaintiff.

 We now turn our consideration to the remaining questions of whether the plaintiff sufficiently established proximate cause and the general allegations of her complaint. In answering these issues we are guided by the following often-stated principles: Figueroa v. Majors, 85 Ariz. 345, at 346, 338 P.2d 803, at 804:

"It is well settled in this jurisdiction that a motion for a directed verdict for the defendant admits the truth of whatever competent evidence the opposing party has introduced, including all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the moving party and in the light most favorable to the opposing party * * * It is further fundamental that a verdict will not be directed where the evidence on material facts is conflicting, or where on undisputed facts reasonable and fair-minded men may differ as to the inferences and conclusions to be drawn, or where different conclusions might reasonably be reached by different minds, and thus the question of negligence and proximate cause is one of fact to be submitted to the jury and not a question of law for the court; if, upon all the facts and circumstances, there is a reasonable chance or likelihood of the conclusions of reasonable men differing, then the question is one for the jury * * *"

We have reviewed the evidence with the above principles in mind, and it is necessary for us to go into some detail in order to clarify our conclusion that a verdict should not have been directed for the defendant. The evidence is sharply conflicting and raised, among others, the following material issues:

 (1) In the summer of 1959, after defendant had obtained a three-plus positive skin test, a negative gastric washing,

and a radiologist's report that the plaintiff might have "a smoldering minimal tuberculosis lesion", did the defendant advise the plaintiff that further testing and "work-up" would be necessary? Defendant testified that he did so advise the plaintiff, and she testified as follows:

"Q. I refer you, then, to the period of June and July, generally the summer of 1959 subsequent to the time of the—perhaps it would be August—subsequent to the time that the gastric washing was negative, did you ever then have occasion to confer with Dr. Herman?

"A. Yes, I did.

"Q. And what was the substance of that visit and that conversation?

"A. I requested that I see the x-rays and that he point out the spots to me, because I wanted to see them, and he did. He pointed them out to me, several spots on my right lung, and then I said, 'Doctor, if they are not tuberculosis, what are they?'

"Q. And he said, 'Oh, they are probably old Valley Fever scars?'

I said, 'But they weren't there nine months ago.'

He said, 'You could have gotten Valley Fever in nine months and gotten over it.'

"Q. Was there any recommendation from the doctor regards further work-up, regards tuberculosis following that conversation?

"A. Never again."

According to the testimony of Dr. Ernst and the defendant, the standard of medical practice would have required further tests and "work-up". If the above conflicting testimony is viewed in the light most favorable to the plaintiff, it would support a conclusion that the defendant did not adhere to the standard of practice, and a jury might reasonably have concluded that the subsequent development of plaintiff's condition into a seriously advanced stage

would not have occurred but for the inaction of the doctor. Clearly, the credibility of the parties was at issue in this respect, and this was not a question that could be decided by the trial court.

■ (2) A second material issue is related to the one discussed above: Was the plaintiff so uncooperative that the defendant was unable to perform the additional tests? As indicated earlier in this opinion, Dr. Herman's contention is that plaintiff was unwilling to proceed with a further work-up, although, by his own testimony, she had been a cooperative and conscientious patient during the first ten to fifteen visits to his office. As to her attitude specifically at and after the time when further tests should have been made, she testified that she would have taken other x-rays if the defendant had recommended them. As for plaintiff's attitude toward further gastric washings, she described it as follows:

"Q. Did the doctor recommend further gastric washings to you after the negative return of the one that was taken?

"A. No, he did not.

"Q. Would you have refused it?

"A. No, I would not have refused it.

\* \* \* \* \* \*

"A. It was a dreadful experience as far as I was concerned, and I kidded him about his being cruel. And I further showed actually being happy at not having to submit to it again, about it being over."

In view of the foregoing and other testimony, which it would be superfluous to quote, the jury might reasonably have concluded that the plaintiff was at all times cooperative and that her conduct did not prevent defendant from doing the further work-up which the standard of medical practice required.

Aside from the material issues cited above, there are others of more or less magnitude, concerning which the evidence is conflicting. Included among these are

whether the defendant obtained a proper medical history, whether and to what extent he followed and gave proper weight and significance to the symptoms of temperature, weight, fatigue, and loss of appetite, and whether he told the plaintiff that she might have tuberculosis.

There is no point in further elaborating the material issues or in further demonstrating the conflict in the evidence. However, in the interest of clarity, we will note the following additional facts:

(1) After the summer of 1959, the plaintiff next visited Dr. Herman on March 1, 1960, at which time he treated her for laryngitis. She made another visit to the defendant on August 29, 1960 and was treated for viral influenza. This visit marked the end of the doctor/patient relationship between the defendant and the plaintiff, a relationship which included 35 to 40 office calls and an indeterminable number of phone calls made by the plaintiff for the purpose of reporting symptoms, checking on the results of tests, or to obtain advice about what to do for her ailments.

(2) On September 6, 1960, slightly more than one week after her last visit to the defendant, the plaintiff first consulted Dr. Ernst.

(3) After examining the plaintiff and conducting several tests, on September 7th Dr. Ernst commenced what he described as " * * * standard therapy for tuberculosis."

(4) On September 12, 1960, Dr. Ernst reviewed x-rays with the plaintiff, advised her of his suspicion that she had tuberculosis, and advised continuation of the treatment commenced on September 6th.

(5) With regard to the ultimate result of his observations and treatment, Dr. Ernst testified:

"I obtained on the 21st of October another sedimentation rate, and whereas the first one had been 41, the second one 36, now it was 28, and this combined with the fact that she had some menstruation made us very happy, so, therefore I began to feel, 'Well, I must have been correct in my diagnosis,' and then when her sputum test came back positive for tuberculosis bacillus, and when it said also on there, 'Niacin positive,' then I felt that this was an indication that I had truly been dealing with tuberculosis as I had really been quite convinced from the way she responded to her treatment, and therefore, since we had a positive sputum, I felt this time we had better report it to the Board of Health."

(6) In December, 1960, by order of the Board of Health, plaintiff was committed to the Arizona State Tuberculosis Sanitarium. There is testimony by Dr. Ernst which reasonably supports the conclusion that the tubercular lesion, with which the plaintiff reported to the sanitarium, at which time the condition was in a far advanced stage, was the same lesion which the radiologist pointed out to the defendant, Dr. Herman, in June of 1959, at which time the defendant was cautioned as previously indicated.

■■■ It is unnecessary to detail the evidence further. In view of all the circumstances and the evidence, much of which is conflicting on material issues of fact, we conclude that the plaintiff made a showing which was sufficient to withstand the motion for a directed verdict. Whether she adequately demonstrated proximate cause, and whether she otherwise established the allegations of her complaint were jury questions.

■■■ As indicated at the beginning of this opinion, in view of the foregoing it is unnecessary for us to consider plaintiff's other assignments of error. Counsel for defendant has fully argued these other issues, in the event that this Court desires to render an "advisory opinion" concerning the points raised. We have reviewed the assignments and find nothing in them which makes it necessary to depart from our customary practice of not deciding issues, un-

less required to do so in order to dispose of the appeal under consideration.

The judgment of the trial court is reversed and a new trial is ordered.

BERNSTEIN, C. J., and STRUCK-MEYER, J., concur.