458 P.2d·525

Ben C. HERSEY and Ivalon I. Hersey, husband and wife, Appellants,

v.

SALT RIVER VALLEY WATER USERS' ASSOCIATION, an Arizona corporation, Appellee.

No. I CA–CIV 882.

Court of Appeals of Arizona, Division 1.

Department B.

Sept. 15, 1969.

Rehearing Denied Oct. 7, 1969.

Review Denied Nov. 12, 1969.

Cates & Sullivan by Otis D. Sullivan, Phoenix, for appellants.

Jennings, Strouss, Salmon & Trask, by Rex H. Moore and M. Byron Lewis, Phoenix, for appellee.

HAIRE, Judge.

This was an action in which plaintiffs sought to recover damages resulting from the wrongful death of Laura Hersey, a minor. The trial court granted defendant's motion for summary judgment, and plaintiffs have appealed. Appellants and appellee will be referred to as plaintiffs and defendant respectively.

Defendant owns, maintains and operates an irrigation lateral along the west side of 75th Avenue, near its intersection with Indian School Road, Maricopa County, Arizona. A short distance north of the intersection of 75th Avenue and Indian School Road the lateral enters an underground pipe and continues underground to the vicinity of 75th Avenue and Thomas Road. Prior to the accident in question, defendant had placed a trash rack at the point where the lateral entered the underground pipe on the north side of Indian School Road. This trash rack consisted of galvanized pipes one inch in diameter set in concrete approximately 5½″ apart. At the time of the accident two of such pipes were missing.

Immediately prior to the accident, Mrs. Hersey had her four children in the family Volkswagen Micro-Bus and was driving west on Indian School Road, approaching 75th Avenue. At the intersection of 75th Avenue and Indian School Road an unidentified car traveling east made a left turn in front of Mrs. Hersey. Mrs. Hersey in attempting to avoid this unidentified car turned the wheel, stepped on the brake, and the Volkswagen then rolled three times.

The Volkswagen had a sun roof on top which, when open or torn off, left an opening of about three feet in the top. This sun roof, support, and the metal baggage rack on the top of the vehicle were all torn off as the vehicle rolled over. Following the accident, the vehicle was on its left side, with its top and the opening next to the irrigation lateral. Mrs. Hersey got out of the vehicle through this opening in the top as soon as it came to rest. At that moment, she saw her daughter, Laura

Hersey, trying to climb out of the lateral on the opposite bank. Laura Hersey apparently had been thrown into the canal through the opening in the roof of the vehicle.

Laura Hersey was seven years old, having just completed her first grade of school. She was alive when she was first in the canal and when last seen was attempting to climb out of defendant's canal.

Shortly downstream from where Laura Hersey was attempting to climb out of the irrigation lateral, the water entered the above mentioned underground culvert. As stated, at the entrance of the culvert is a trash rack installed and maintained by the defendant, and two of the bars from this rack were missing. The decedent was swept through this rack into the underground culvert and subsequently drowned. The side of the irrigation lateral in the immediate area in which the decedent was attempting to climb out was lined with cement.

The body of the decedent, Laura Hersey, was later found beyond the underground culvert in the irrigation lateral between Osborn and Thomas Roads.

On this appeal from summary judgment granted in favor of the defendant, the plaintiffs do not contend that there were any controverted issues of material fact; they only raise questions as to the correctness of the trial court's ruling that based upon the foregoing facts the defendant was entitled to judgment as a matter of law.

The questions presented for review are stated in quite different terms in plaintiffs' and defendant's briefs, but in essence they raise the same legal issues, which may be summarized as follows:

1. Did the defendant-owner of the irrigation lateral owe a duty to plaintiffs' decedent other than to refrain from wanton and wilful negligence?

2. If the defendant-owner of the irrigation lateral owed a duty to the decedent other than to refrain from wanton and wilful negligence, was the failure of the defendant to install and properly maintain a rack at the point where its irrigation lat-

eral facilities went underground a breach of that duty?

3. Assuming a duty, and a breach of that duty, was defendant's breach of duty a proximate cause or was the intervening act of the "phantom" automobile a sufficient intervening cause to relieve defendant from liability?

■ The elements of a cause of action for negligence are well established in Arizona. The three elements necessary for a case of actionable negligence are as follows:

1. There must exist a duty on the part of the defendant to protect the plaintiff from the injury of which he complains;

2. The defendant must fail to perform that duty; and

3. An injury to the plaintiff must proximately result from such failure.

Shafer v. Monte Mansfield Motors, 91 Ariz. 331, 372 P.2d 333 (1962).

What was the duty which defendant owed to plaintiffs' decedent in the present case? Defendant contends that Laura Hersey was a trespasser and that the defendant as the owner or possessor of the irrigation lateral owed no duty to her except to refrain from wilful and wanton negligence. If defendant is correct, the plaintiffs cannot recover in this action because the complaint does not allege and there is nothing in the facts which could cause defendant's actions to be characterized as "wilful and wanton".

■ Defendant's contention that a possessor of land has no duty to a trespasser except to refrain from wilful and wanton negligence is correct as a statement of a general principle of law. Salt River Valley Water Users' Association v. Compton, 40 Ariz. 282, 11 P.2d 839 (1932) (overruled on other grounds in MacNeil v. Perkins, 84 Ariz. 74, 324 P.2d 211 (1958) ). As stated in Holbrook Light & Power Co. v. Gordon, 61 Ariz. 256, 263, 148 P.2d 360, 363 (1944):

"The general rule is that a trespasser, who enters upon another's premises and is there accidentally injured by or through

the operation or use of the owner's property in his business, may not recover damages for such an injury."

However, there are exceptions to this rule.

██ ██ One exception repeatedly recognized in Arizona is the "attractive nuisance" doctrine. These cases recognize that in certain situations involving trespassing children, a possessor of land may have a duty over and beyond that normally owed to trespassers. Giacona v. Tapley, 5 Ariz.App. 494, 428 P.2d 439 (1967). An important reason for this exception is that because of his immaturity, the child may be incapable of appreciating all of the possible dangers and exercising sound judgment in entering upon the defendant's land. W. Prosser, Handbook of the Law of Torts, Sec. 59 (3d ed.1964). However, plaintiffs in their brief emphasize that they do not rely on the attractive nuisance doctrine in this case because under the facts the decedent "was not attracted to the area in question." While under the later Arizona decisions involving the doctrine of attractive nuisance the element of "attraction" may not be of too much importance (see MacNeil v. Perkins, 84 Ariz. 74, 324 P.2d 211 (1958) ), we agree with plaintiffs that this doctrine is not applicable to the facts of this case. Here, the fact that the decedent was a young child is immaterial insofar as concerns the trespass, because the trespass was accidental and completely unintentional. Given the same circumstances, an adult in Laura Hersey's position in the vehicle would in all probability have been propelled into defendant's irrigation lateral.

However, there is another exception to the general principle relating to the duty of a possessor of land which in our opinion (based upon the meager facts before the trial court) might be applicable to impose a higher duty upon the defendant in this case. Here, the decedent drowned when thrown into an open irrigation ditch owned by defendant. This open irrigation ditch ran along the side of 75th Avenue which is a public highway. As stated in the Restatement (Second) of Torts, Sec. 368 (1965) :

"A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who

"(a) are traveling on the highway, or

"(b) foreseeably deviate from it in the ordinary course of travel."

We have not found any Arizona cases which have held a possessor of land liable under the above quoted clause (b).[1] However, there are many cases from other jurisdictions which give it support. See Restatement (Second) of Torts, Appendix Sec. 368 (1965) ; W. Prosser, Handbook of the Law of Torts, Sec. 57 (3d ed.1964). In Durst v. Wareham, 132 Kan. 785, 297 P. 675 (1931), the landowner claimed that he was not liable for his negligence because plaintiff was a trespasser. In that case the jury had found that plaintiff was on the defendant's land, not of his own volition, but on account of his having lost control of his motorcycle, due to the icy condition of the street. The court, in holding the defendant liable for negligence, stated that it was not the closeness of the pitfall or dangerous structure to the highway that renders the landowner liable, but rather it is the danger that the structure affords to travelers upon the highway. In Edgarton v. H. P. Welch Co., 321 Mass. 603, 74 N.E. 2d 674, 676, 174 A.L.R. 462 (1947), the decedent was a passenger in a truck which,

---

1. See Rodgers v. Ray, 457 P.2d 281 (Ariz. Ct.App.1969) wherein the court stated: "This court recognizes, of course, that there may be liability for excavations or other artificial conditions so near to existing highways that the possessor should realize there is an unreasonable risk to others of being injured by *physical contact* with such artificial condition."

"[w]hile going around a curve on Ashburham Street, * * * instead of following the curve, went straight on over a curbing and across a lawn until it came to a wooded bank 'where there was a steep drop.' Continuing down the enbankment, the truck sideswiped a tree, and its rear end hit and broke off a pole on which electric wires were strung."

The complaint alleged that the power company was negligent. The power company contended that even if there was evidence of negligence, plaintiff was barred from recovery because his status on the land where the accident happened was that of a trespasser or licensee, and that he could not recover in the absence of evidence of wanton or reckless conduct on its part. The appellate court rejected this contention, pointing out the unintentional nature of plaintiff's intrusion and stated that the trial court should have allowed the case to go to the jury upon a showing of negligence.

Defendant in its brief contends that whether the intruder comes upon the land of his own free will or otherwise, makes no difference as to his status as a trespasser insofar as the liability of the possessor of the land to the intruder is concerned, and cites Restatement (Second) of Torts, Sec. 329, comment c. (1965) as follows:

"c. In determining whether the person who enters or remains on land is a trespasser within the meaning of this Section, the question whether his entry has been intentional, negligent, or purely accidental is not material, except as it may bear upon the existence of a privilege to enter. Such a person will himself become liable in an action for the tort of trespass to land, under the rules stated in §§ 158, 165 and 166, only if his intrusion has been intentional, or negligent, or the result of an abnormally dangerous activity in which he is engaged. So far as the liability of the possessor of the land to the intruder is concerned, however, the possessor's duty, and liability, will be the same regardless of the manner of entry, so long as the entry itself is not privileged. The determining fact is the presence or absence of a privilege to enter or to remain on the land, and the status of an accidental trespasser is still that of a trespasser.

"Illustration:

"1. Without any negligence on his part A, standing on the platform of a subway sation of the X Company, slips and falls onto the tracks. While there he is run over by the train of X Company, and injured. A is a trespasser, and the liability to him is determined by the rules stated in §§ 333 and 336, notwithstanding the accidental character of his intrusion."

While this might be a true statement of the law as applied to the facts stated in the illustration, we are of the opinion that Sec. 368 of the Restatement (Second) of Torts states an exception applicable when the artifical condition constitutes an unreasonable risk of harm to the user of a public highway.

Although not mentioned in either the brief of the plaintiffs or defendant, the minute entry of the trial court as set forth in the abstract of record states that the order granting defendant's motion for summary judgment is "based on Salt River Valley Water Users' Association v. Cornum, 49 Ariz. 1 [63 P.2d 639] (1937)." This case along with several others was cited in defendant's brief in support of its contention that if we assume the existence of a duty, and a breach of that duty (negligence) by defendant, still the facts show as a matter of law that there was an intervening cause which was the efficient proximate cause of the death of plaintiffs' decedent. Factually, it was the contention of defendant that the action of the "phantom car" as well as Mrs. Hersey's own actions constituted the intervening cause. In Salt River Valley Water Users' Association v. Cornum, 49 Ariz. 1, 12, 63 P.2d 639, 645 (1937), the court stated that:

"Where the author of a negligent static condition should reasonably have anticipated that the primary and active negligence which started the sequence which produced the injury might occur and

that it would act together with the static condition and produce injury, even though the two acts of negligence are not concurrent, they are both proximate causes of the injury and an action may be brought against either negligent person, though not against them jointly."

Defendant in its brief further quotes Salinas v. Kahn, 2 Ariz.App. 181, 407 P.2d 120 (1965), opinion modified and rehearing denied, 2 Ariz.App. 348, 409 P.2d 64 (1965), as follows:

" '* * * Most authority, and certainly that in Arizona (Salt River Valley W. U. Assn. v. Cornum, supra Note 1), is to the effect that whether subsequent negligent conduct is a superseding cause of an injury so as to relieve the first negligent actor of liability depends upon whether the first actor " * * * should reasonably have anticipated * * *" that the subsequent negligent conduct "might" occur and together with the preceding negligent conduct cause the injury (quotes from Salt River Valley W. U. Assn. v. Cornum, supra). Foreseeability appears to be the gist of the test adopted by our Supreme Court * * *.' (2 Ariz.App. at 189–190, 407 P.2d at 128)"

The plaintiffs do not question, nor does this court, that these cases correctly state the principle applicable to this case. However, we do question the correctness of defendant's contention that defendant could not reasonably have foreseen that as a result of a motor vehicle accident occurring on the adjacent public highway, a user of that highway might be thrown into the irrigation lateral.

■ The question of whether a defendant's negligence is the proximate cause of an injury is one of fact to be submitted to the jury and not a question of law for the court, if, upon all the facts and circumstances there is a reasonable chance or likelihood of the conclusions of reasonable men differing. Stearman v. Miranda, 97 Ariz. 55, 396 P.2d 622 (1964); Vigil v. Herman, 102 Ariz. 31, 424 P.2d 159 (1967). In reviewing the granting of a motion for summary judgment, the evidence and all reasonable inferences that may be drawn therefrom will be viewed in a light most favorable to the party against whom judgment was rendered. Lowery v. Universal Match Corp., 6 Ariz.App. 98, 430 P.2d 444 (1967). With these principles in mind, we are of the opinion that based upon the facts in the record, reasonable men could have found that defendant could reasonably have foreseen that a traveler on the highway as a result of a collision or other mishap, might be thrown into its irrigation lateral. It is our opinion that the trial court was not correct in holding as a matter of law that defendant's conduct was not a proximate cause of the death of plaintiffs' decedent. We believe that reasonable men could foresee that in today's traffic an automobile driver might swerve to avoid a collision with another vehicle or might be hit by another vehicle and thrown or pushed onto defendant's premises. Durst v. Wareham, *supra*.

■ Thus far in this opinion we have bypassed what we consider to be the principal issue in this case. The specific act of negligence charged against the defendant is that defendant failed "to properly install and maintain a grate at a point where their canal facilities go underground for approximately one-half mile. * * *" Defendant vigorously contends that in Arizona, as a matter of law, such conduct or omission cannot constitute actionable negligence. With this contention we must reluctantly agree. The public policy of this state regarding open conduits for the transportation of water was first set forth in 1909 in Salladay v. Old Dominion Copper Mining Co., 12 Ariz. 124, 100 P. 441 (1909). That policy is summarized in the later decision, City of Glendale v. Sutter, 54 Ariz. 326, 330, 95 P.2d 569, 570 (1939), as follows:

"Owing to the peculiar problems indigenous to the desert country, where all gardening, farming and cultivation are carried on by irrigation, this court has adopted the rule that it is not negligence to carry water for farming purposes in

an open ditch or open flume. Running water, as we all know, is very attractive not only to children but grownups, especially in the warm summer months. In Salladay v. Old Dominion Copper Mining Company, 12 Ariz. 124, 100 P. 441, 442, the question was as to whether the defendant was liable for damages for the death of a child drowned in an open and uncovered flume used by it to carry water to its mine. The plaintiff in that case did not contend the defendant's act was actionable negligence generally, but invoked the attractive nuisance rule under which infants are sometimes permitted to recover for injuries where mature persons may not. We went further than to hold that such rule should not apply to irrigation and mining and said, in effect, that farming and mining are so essential to the prosperity and welfare of the state that it was against public policy to make the construction and maintenance of open canals, ditches, flumes, and 'various means of diversion' for irrigation a ground of negligence."

In Lee v. Salt River Valley Water Users' Assn., 73 Ariz. 122, 126; 238 P.2d 945, 948 (1951) (involving injuries received from electric shock at a pump house) this policy was again affirmed as follows:

"It has been the law in this state since the case of Salladay v. Old Dominion Copper Mining & Smelting Co., 12 Ariz. 124, 100 P. 441, decided in 1909, that the turntable doctrine would not be extended to canals especially when the very life-blood of our economic stability rested upon the irrigation of our arid lands. Certainly there can be no distinction between the maintenance of a wier at pumps for the purpose of measuring water to be used for irrigation purposes and the maintenance of canals for the purpose of conveying the water from the pumping plants to the lands upon which it is applied."

See also Downs v. Sulphur Springs Valley Electric Cooperative, Inc., 80 Ariz. 286, 297 P.2d 339 (1956).

In plaintiffs' brief counsel attempts to circumvent these decisions by emphasizing that plaintiff is not complaining about the open canal, but rather about the failure to properly install and maintain a grate at the entrance to the underground culvert. Under the reasoning of the above cited cases we do not believe that this distinction is meaningful. The reasoning of *Salladay* would apply equally to the diversion facilities from the canal to the underground culvert. Further, there is no assurance that plaintiffs' decedent would not have drowned even if the grate had not been defective, nor is there any evidence that defendant knew or should have known of the defective condition of the grate.

It might well be that with the developing concentration of population and the increase of traffic along our public highways, a countervailing public policy has developed which would require that the immunity granted in *Salladay* be tempered. However, even if such is the case, this court is bound by the prior decisions of the Arizona Supreme Court until changed by that court. McKay v. Industrial Commission, 103 Ariz. 191, 438 P.2d 757 (1968). In view of the foregoing, even though under the facts of this case there might have been a duty to plaintiffs' decedent not to injure her by negligent conduct, and even though a jury might conclude that the defendant could reasonably have foreseen that its conduct might, together with subsequent negligent conduct occur and cause the injury complained of, still, under the public policy of the State of Arizona as announced in the foregoing decisions, the conduct of the defendant cannot constitute actionable negligence, and hence there can be no liability.

The judgment of the trial court is affirmed.

JACOBSON, Acting P. J., Department B, concurs.

CAMERON, Judge (dissenting):

I must dissent from the opinion in that I believe the failure to properly maintain a

grate at the entrance to the underground culvert is indeed a meaningful distinction. It is not only reasonable that the defendant could foresee an accident such as the one that occurred here, but also the failure to maintain the grating resulted in an unreasonable risk to others particularly those such as the deceased who must, in using the highway, drive past the waterway maintained by the defendant. I would reverse the granting of the motion for summary judgment and allow the jury to decide the matter.