496 P.2d 136

**Robert J. DOMBROWSKI and Violet Dombrowski, husband and wife, Appellants,**

v.

**MARICOPA COUNTY MUNICIPAL WATER CONSERVATION DISTRICT NO. I, Appellee.**

**No. 10712.**

Supreme Court of Arizona,
In Banc.

April 24, 1972.

Rehearing Denied May 23, 1972.

Harrison, Myers & Singer, by Mark I. Harrison, Phoenix, for appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Robert S. Tancer and John H. Killingsworth, Phoenix, for appellees.

Jennings, Strouss & Salmon, Phoenix, Maxwell, Johnson & Smith, Scottsdale, Rolle, Jones & Benton, Westover, Keddie & Choules, Yuma, amici curiae.

CAMERON, Vice Chief Justice.

This is an appeal from a summary judgment in favor of defendant Maricopa County Municipal Water Conservation District No. 1, entered by the Superior Court of Maricopa County in a wrongful death action brought by the mother and stepfather of Arthur Gettas, a minor, who drowned in an irrigation canal owned and maintained by defendant.

We are asked on appeal to reverse our previous decisions and to apply the attractive nuisance doctrine to the defendant water district.

The facts necessary for a determination of this matter are as follows. On 17 June 1968, the deceased, age 14 years, and three others, visited the area south of Lower Lake Pleasant on the Beardsley Canal (which is owned and maintained by defendants). The area is uninhabited and is reached by a dirt road. About three miles south of the lake, the canal empties into a stilling pool which is used to slow down the rate of flow of the water. The small waterfall from the canal to stilling pool makes a whirlpool on one end. Defendants were aware of the fact that the canal was frequently used by unauthorized teenagers, and had once put up a fence and a "No Trespassing, Danger" sign, both of which were torn down by 17 June 1968.

On 17 June 1968, decedent's three friends all floated over the waterfall and waited for Arthur. Arthur went over the falls a bit too far to one side and got caught in what has been variously described as an undertow, a swirlpool, or a whirlpool. He wasn't a strong swimmer and was unable to either stay afloat in the area of the whirlpool or swim out of the whirlpool. Two friends entered the water and tried to save him, but the whirlpool was so strong that at least one would-be rescuer was nearly sucked under the water. By the time they got Arthur out of the pond he was dead, and attempts at resuscitation were useless.

## SHOULD THE ATTRACTIVE NUISANCE DOCTRINE BE APPLIED TO CANALS?

Arizona was very early faced with the question of whether to apply the attractive nuisance doctrine to canals. In the case of Salladay v. Old Dominion Copper Mining Company, 12 Ariz. 124, 100 P. 441 (1909),

this court considered the question at some length:

"* * * It is a matter of common knowledge that alluring and attractive flumes, such as the one in question in this case, carrying running water, are extensively used in this territory, not only by miners in the necessary and proper conduct of their business, but by farmers in the necessary diversion and application of the public streams to a beneficial use upon their lands in the cultivation of their crops. Not only flumes but irrigation ditches, large and small, similar in purpose, construction, and use, and equally dangerous and alluring to the child, are to be found throughout the territory wherever cultivation of the land is carried on, and such conduits, practically impossible to render harmless, are indispensable for the maintenance of life and prosperity. There is no distinction that can properly be drawn for liability for injuries received by a child from any of such various means of diversion or use of water. Both as a matter of law and as a matter of public policy we feel that the so-called 'turntable doctrine' should not be extended to cover such a case as is here presented." 12 Ariz. at 129–130, 100 P. at 442.

Salladay v. Old Dominion Copper Mining Company, supra, can be said to rest upon two bases: the public policy that required special treatment or immunity for waterways and the feeling that, "the danger [was] not only obvious, but * * * the object itself from which the danger arises [was] of such a character that, * * * 'the defendant was entitled to assume that the plaintiff's natural guardians would protect him * * *'." 12 Ariz. at 130, 100 P. at 443.

This court has built upon and extended the Salladay decision to provide almost complete immunity to irrigation districts in Arizona in the maintenance not only of the canals and diversion points, but also various mechanical and electrical equipment needed to operate the water distribution system. In a case concerning injuries received from an electrical shock at a pump house, we stated:

"* * * It has been the law in this state since the case of Salladay v. Old Dominion Copper Mining & Smelting Co., 12 Ariz. 124, 100 P. 441, decided in 1909, that the turntable doctrine would not be extended to canals especially when the very lifeblood of our economic stability rested upon the irrigation of our arid lands. Certainly there can be no distinction between the maintenance of a wier at pumps for the purpose of measuring water to be used for irrigation purposes and the maintenance of canals for the purpose of conveying the water from the pumping plants to the lands upon which it is applied." Lee v. Salt River Valley Water Users' Ass'n, 73 Ariz. 122, 126, 238 P.2d 945, 948 (1951). See also Downs v. Sulphur Springs Valley Electric Co-op., 80 Ariz. 286, 297 P.2d 339 (1956); City of Glendale v. Sutter, 54 Ariz. 326, 95 P.2d 569 (1939).

The Court of Appeals also has recently discussed this problem:

"In plaintiffs' brief counsel attempts to circumvent these decisions by emphasizing that plaintiff is not complaining about the open canal, but rather about the failure to properly install and maintain a grate at the entrance to the underground culvert. Under the reasoning of the above cited cases we do not believe that this distinction is meaningful. The reasoning of Salladay would apply equally to the diversion facilities from the canal to the underground culvert. * * *

"It might well be that with the developing concentration of population and the increase of traffic along our public highways, a countervailing public policy has developed which would require that the immunity granted in Salladay be tempered. However, even if such is the case, this court is bound by the prior decisions of the Arizona Supreme Court until changed by that court. * * *." Hersey v. Salt River Valley Water Users' Ass'n,

10 Ariz.App. 321, 327, 458 P.2d 525, 531 (1969).

It may be that in a proper case there can be shown a "meaningful distinction" between the immunity that this court has historically given to open irrigation canals on the one hand, and the negligent design and maintenance of mechanical or electrical equipment, wiers, dams and diversion points in congested urban areas on the other hand. While this case is certainly tragic, we do not believe it presents such a "meaningful distinction" that it would require us to modify our previous decisions in this field of the law.

We therefore affirm the decision of the trial court in granting the motion for summary judgment.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.