870 P.2d 1166

**SALT RIVER VALLEY WATER USERS' ASSOCIATION, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, in and for the COUNTY OF MARICOPA; Daniel A. Barker, a judge thereof, Respondent Judge,**

Melissa SHOEMAKER and Paul Shoemaker, a married couple, individually and on behalf of their minor son, Michael Shoemaker, Real Parties in Interest.

No. 1 CA–SA 93–0172.

Court of Appeals of Arizona, Division 1, Department D.

Oct. 21, 1993.

Review Denied April 19, 1994.*

* Feldman, C.J., and Zlaket, J., of the Supreme Court, voted to grant the petition for review.

Tolman & Osborne, P.C. by Reed Tolman, Tempe, and Renee B. Gerstman by Renee B. Gerstman, Phoenix, for real parties in interest.

Jennings, Strouss & Salmon, P.L.C. by Michael A. Beale, James M. Ackerman and J. Matthew Powell, Phoenix, for petitioner.

## OPINION

TOCI, Judge.

This is a petition for special action brought by defendant Salt River Valley Water Users' Association ("SRP") to review the trial court's denial of a motion for summary judgment in a case in which a six-year-old child drowned in an SRP culvert. SRP claimed immunity from suit under the doctrine announced in *Salladay v. Old Dominion Copper Mining Co.*, 12 Ariz. 124, 100 P. 441 (1909). The trial court denied SRP's first motion for summary judgment, finding that disputed issues of fact existed concerning real parties in interests' ("plaintiffs") assertion that SRP was not protected from suit by the *Salladay* doctrine. The trial court refused to consider SRP's second motion for summary judgment, concluding that the motion was a "horizontal appeal." This court granted an interlocutory stay of the proceedings and accepted jurisdiction with this opinion to follow.

We first conclude that because SRP's second motion for summary judgment was based on additional evidence discovered after the first motion for summary judgment, the second motion was not a "horizontal appeal." Second, we conclude that because irrigation districts are immune from suit for attractive nuisance claims involving injury or death to trespassing children, SRP is entitled to the benefit of the *Salladay* doctrine. Finally, we conclude that plaintiffs did not establish a triable issue of fact that SRP acted with conscious disregard for the rights of the public so as to deprive SRP of immunity under *Harris v. Buckeye Irrigation Co.*, 118 Ariz. 498, 578 P.2d 177 (1978). Consequently, we hold that SRP is entitled to immunity and that the trial court abused its discretion in not considering and granting SRP's second motion for summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed. On September 19, 1991, Kevin Paul Shoemaker, age six, was playing with two other boys in a SRP canal. He apparently lost his footing, floated downstream approximately fifty-eight feet, and drowned in a sixty-foot long enclosed culvert, approximately three and one-half feet in diameter, under Industrial Avenue in Chandler, Arizona. Kevin's body was recovered from inside the culvert by a diver in scuba gear.

According to SRP written policy, a culvert of less than 100 feet in length did not require a trashrack or grate at the entrance unless "safety considerations justify a trashrack-headwall to prevent people from entering into the conduit." Under this policy, SRP did not consider a trashrack necessary for safety reasons unless the culvert was obstructed by a water delivery structure that prevented an object from freely passing through the culvert. For example, the culvert downstream from Industrial Avenue— which is less than 100 feet in length—houses a turnout structure obstructing the exit from the culvert. Consequently, it has a trashrack installed at the inlet. Because the culvert under Industrial Avenue contained no such obstruction, under SRP's policy a trashrack was not required at the entrance.

Plaintiffs' expert established by affidavit that concrete canals, such as the lateral where the drowning occurred, are extremely hazardous. He concluded that the SRP canal where Kevin drowned did not meet the 1971 Bureau of Reclamation design standards. The side slopes of the canal were made of concrete and were very steep, which would prevent a person from climbing out of the canal. Furthermore, according to plaintiffs' expert, the canal was devoid of safety measures recommended by the bureau. Specifically, the expert concluded that SRP could have "mitigated" the hazard to trespassing children either by replacing the open lateral with cast-in-place concrete pipe or by the installation of fencing to prevent access to the lateral. Alternatively, the affidavit of

plaintiffs' expert established that SRP could have made the canal safer by installing ladders, cables and floats, nets, and safety screens and trash racks at the entrance to the culvert. Plaintiffs' expert estimated the cost of a trash rack to be approximately $1000.

## DISCUSSION

### 1. Is Special Action Relief Proper Where Qualified Tort Immunity is Asserted?

We begin with the proposition that denial of a motion for summary judgment is not appropriate for special action jurisdiction except in very unusual cases. *Ft. Lowell–NSS Ltd. Partnership v. Kelly*, 166 Ariz. 96, 99–100, 800 P.2d 962, 965–66 (1990); *United States v. Superior Ct.*, 144 Ariz. 265, 269, 697 P.2d 658, 662 (1985). Nevertheless, there are exceptions to this general rule. Accordingly, we have accepted special action review in cases where defendant has claimed judicial immunity, *Lavit v. Superior Ct.*, 173 Ariz. 96, 97, 839 P.2d 1141, 1142 (1992); *Henke v. Superior Ct.*, 161 Ariz. 96, 98–99, 775 P.2d 1160, 1162–63 (App.1989), because if one is "erroneously forced to stand trial, he has lost the benefit of immunity, even if he is found not liable." *Henke*, 161 Ariz. at 99, 775 P.2d at 1163. Consequently, a defendant who asserts an immunity has no adequate remedy at law by direct appeal after trial. *Lavit*, 173 Ariz. at 97, 839 P.2d at 1142.

Here, we can see little difference between the qualified common law tort immunity SRP claims under *Salladay* and the claim of judicial immunity in *Lavit*. Our supreme court has held for many years that common law tort immunity, whether absolute or qualified, protects not just from liability, but from suit. *Henke*, 161 Ariz. at 100, 775 P.2d at 1164. Thus, we conclude that special action relief is appropriate to enforce a claim of qualified tort immunity. *See Bledsoe v. Goodfarb*, 170 Ariz. 256, 266, 823 P.2d 1264, 1274 (1991) (the intent and viability of the *Salladay* doctrine and the interpretation of the recreational use statute have statewide significance).

### 2. Does A.R.S. Section 33–1551 Codify the *Salladay* Doctrine and Thus Preclude Special Action Relief?

Plaintiffs argue that because of the recent passage of Arizona's amended recreational use statute, A.R.S. section 33–1551, ch. 90, § 25, Ariz.Sess.Laws 265–66, this case is not appropriate for special action review. Thus, according to plaintiffs, the courts will no longer need to interpret *Salladay* because any case involving death or injuries resulting from SRP's operations will be determined under section 33–1551. This argument has no merit.

Section 33–1551 is intended to promote the use of vast areas of unused land for recreational purposes. *Bledsoe*, 170 Ariz. at 259 n. 2, 823 P.2d at 1267 n. 2. It encourages owners of private and public lands to make their property accessible to the public by providing the owners with a broad immunity from suit for injuries. A.R.S. § 33–1551(A). This broad immunity only applies, however, to suits by a "recreational user" or "educational user." *Id.* A "recreational user" is defined as "a person to whom permission has been granted or implied ... to travel across or to enter upon premises." A.R.S. § 33–1551(B)(3).

SRP policy, however, prohibits the recreational use of its canals and laterals. Because those who enter the canals and laterals do so without SRP's permission, they are trespassers rather than recreational users and consequently are not covered by section 33–1551. Thus, the extent and viability of the *Salladay* doctrine continues to be a matter of judicial interpretation notwithstanding the amendment of section 33–1551.

### 3. Did the Trial Court Abuse its Discretion in Denying SRP's Second Motion For Summary Judgment?

SRP's first motion for summary judgment was filed in August of 1992. In response to that motion, plaintiffs argued that SRP was deprived of immunity because of its "public be damned" policy. According to plaintiffs' response, as a result of SRP's failure to clean the lateral and to install a trashrack grate on the entrance to the culvert, Kevin drowned

when "he became entangled in debris in the culvert." The trial court denied the motion for summary judgment. It held that conflicting inferences could be drawn from the record about whether the *Salladay* doctrine applied and whether SRP was deprived of immunity because it had engaged in callous conduct toward the public.

Approximately four months from the denial of the first motion for summary judgment, after engaging in additional discovery and investigation, SRP filed a second motion for summary judgment. SRP supported the second motion with uncontroverted affidavits that no obstruction existed in the culvert that could have impeded Kevin's passage through it and that Kevin did not, as plaintiffs claimed, become "entangled in debris." SRP also produced uncontroverted evidence that by memo dated July 8, 1987, it adopted a policy requiring trashracks in short culverts "where safety considerations justify [them]," and that, after the drowning, it had rejected an internal suggestion to modify this safety policy. Nevertheless, the trial court denied the second motion, holding that it was an unauthorized "horizontal appeal" and not within the exception announced in *Autonumerics, Inc. v. Bayer Indus., Inc.*, 144 Ariz. 181, 185, 696 P.2d 1330, 1334 (App.1984). We disagree.

After denial of a motion for summary judgment, a second motion is unauthorized when no new discovery has taken place. *Chanay v. Chittenden*, 115 Ariz. 32, 34, 563 P.2d 287, 289 (1977). In other words, if no new facts are produced, the parties are not allowed to relitigate a motion for summary judgment already decided. Here, however, additional discovery revealed uncontroverted evidence that refuted plaintiffs' claim that SRP was deprived of immunity because it engaged in "public be damned" conduct. This case clearly falls within the *Autonumerics* exception to the prohibition against consideration of a second motion for summary judgment. *Id.*, 144 Ariz. at 185, 696 P.2d at 1334.

The standard we apply in review of the trial court's denial of a motion for summary judgment is whether the trial court abused its discretion. In exercising its discretion, the trial court is not authorized to misapply the law or a legal principle. *City of Phoenix v. Geyler*, 144 Ariz. 323, 328–29, 697 P.2d 1073, 1079–80 (1985). Here, the trial court misapplied the law announced in *Autonumerics*.

Furthermore, the facts produced in support of plaintiffs' claim that SRP is not entitled to immunity because it engaged in "public be damned" conduct "have so little probative value ... that reasonable people could not agree with the conclusion advanced by [plaintiffs]." *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Thus, because the record shows that no real dispute exists as to any material fact regarding SRP's immunity from suit, it was entitled to judgment as a matter of law. Ariz. R.Civ.P. 56(c); *United Bank of Arizona v. Allyn*, 167 Ariz. 191, 196, 805 P.2d 1012, 1017 (App.1991). Under these circumstances, the trial court's failure to consider and grant SRP's motion for summary judgment was an abuse of discretion.

### 4. Is the *Salladay* Doctrine Still Viable in Arizona?

We reject plaintiffs' argument that the *Salladay* immunity is a relic of the past and that changing conditions dictate that it be abolished. Even if we were so inclined to hold, we are bound by the prior decisions of our supreme court. We hold that the *Salladay* doctrine remains a viable defense to suits against an irrigation company "based on the theory that the operation of an unfenced canal and its equipment is per se an act of negligence." *Bledsoe*, 170 Ariz. at 266, 823 P.2d at 1274.

In *Salladay*, the plaintiff alleged that a three-year-old child fell into an uncovered mining flume that discharged water over a fifteen-foot fall. The child was swept along by the rushing water and carried over the fall to her death. The issue was whether the flume, with its rushing water, was an attractive nuisance for which defendant was required to maintain "a proper inclosure, covering, or other safeguard." 12 Ariz. at 126–28, 100 P. at 441–42. The Arizona Supreme Court affirmed the dismissal of the plaintiff's

complaint by the trial court, holding that as a matter of law and public policy, the attractive nuisance doctrine should not be applied to the maintenance of a flume to transport water. *Id.* at 129–31, 100 P. at 442–43.

Our supreme court has recently noted, in a case involving a bicyclist injured by a cable gate stretched across an SRP canal access road, that the same considerations applied in *Salladay* in 1906 apply today in deciding when an irrigation company is entitled to tort immunity. *Bledsoe,* 170 Ariz. at 263, 823 P.2d at 1271. These considerations are that (1) it is impossible to render canals harmless, (2) such conduits " 'are indispensable for the maintenance of life and prosperity,' " and (3) because the danger of open canals is obvious, " 'defendant [is] entitled to assume that plaintiff's natural guardians [will] protect him from any dangers attached thereto.' " *Id.* at 263–64, 823 P.2d at 2171–72. In *Bledsoe,* the court concluded that the dangers of canal roads "are simply not comparable to the operator's inability to protect children from the inherent, unavoidable dangers of open canals." *Id.* at 265, 823 P.2d at 1273.

■ The *Bledsoe* court also recognized that "the continued delivery of irrigation water to our arid land" is still an important policy rationale behind the *Salladay* doctrine. *Id.* 170 Ariz. at 263, 266, 823 P.2d at 1271, 1274. Here, plaintiffs argue otherwise, asserting that SRP is asking for the continuance of "84 year old policies that make no sense today." According to plaintiffs, and we agree, in *Dombrowski v. Maricopa County Mun. Water Conservation Dist.,* 108 Ariz. 275, 276–77, 496 P.2d 136, 137–38 (1972) and *Hersey v. Salt River Valley Water Users' Ass'n,* 10 Ariz.App. 321, 327, 458 P.2d 525, 531 (1969), our appellate courts "recognized

that [the] urbanization of Arizona ... may lead to the need to abandon *Salladay.*" Nevertheless, although plaintiffs may question the wisdom of the *Salladay* doctrine, we are, in the language of this court in *Hersey,* "bound by the prior decisions of the Arizona Supreme Court until changed by that court." *Hersey,* 10 Ariz.App. at 327, 458 P.2d at 531 (citing *McKay v. Industrial Comm'n,* 103 Ariz. 191, 438 P.2d 757 (1968)).

Consequently, at least with regard to trespassing children who drown in irrigation canals, as a matter of public policy, the *Salladay* doctrine is as viable today as it was in 1906. *See Bledsoe,* 170 Ariz. at 266, 823 P.2d at 1271; *Harris,* 118 Ariz. at 502, 578 P.2d at 181 ("[*Salladay* ] is sound public policy today as far as the use of canals ... [is] concerned."). Nor are we convinced that Arizona is out of step with other states. Although plaintiffs assail the doctrine by pointing to the Restatement (Second) of Torts § 339 (1965) ("Restatement") [1] as the "modern formulation of landowner liability," we are not convinced. Before section 339 can be applied the court must find "(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk...." Restatement § 339(d).

Here, the uncontradicted evidence in the record indicates that SRP has over 1000 miles of canals, laterals, and culverts in the Phoenix area. These canals are essential for the delivery of water for both agricultural and urban use in central Arizona. Moreover, the canal system is an obvious, inherently dangerous condition that cannot be feasibly rendered harmless. Consequently, because the utility of maintaining the canal system and the burden of eliminating the danger are

---

1. Restatement (Second) of Torts § 339 states: A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if
   (a) the place where the condition exists is one upon which the possessor knows or has reasons to know that children are likely to trespass, and
   (b) the condition is one of which the possessor knows or has reasons to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

   (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
   (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
   (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

great, no basis exists to apply section 339 of the Restatement. Thus, even if plaintiffs are correct that section 339 should apply to determine whether SRP has attractive nuisance liability, it avails them nothing under these circumstances. *Accord Hanners v. City of Ashland,* 331 S.W.2d 729, 730 (Ky.1959) (reservoir cannot be considered an attractive nuisance in light of costs of safeguards); *Frensley v. Gravity Drainage Dist. No. 5,* 180 So.2d 743, 744–45 (La.App.1965) (drainage canal is not an attractive nuisance under Restatement § 339(d)); *Mellas v. Lowdermilk,* 58 N.M. 363, 271 P.2d 399, 403 (1954) (pond is not an attractive nuisance in light of its usefulness and the impossibility of rendering it harmless); *Loveland v. Orem City Corp.,* 746 P.2d 763, 772–73 (Utah 1987) (canal is not an attractive nuisance in light of its usefulness and the cost of fencing).

The dissent argues that we "improperly consider[ed] the cost of eliminating the danger in all of the Salt River Project's more than 1000 miles of canals," and that "SRP has not proved ... that the risk to Kevin Shoemaker and other children is outweighed by the $1,000 expense of installing a trashgrate on a culvert of less than 100 feet." The conclusion we reach in this opinion, however, is that the attractive nuisance doctrine embodied in section 339 of the Restatement *does not apply to SRP because of Salladay and its progeny.* We discuss the risk-benefit issue in the preceding paragraph only in the context of considering whether, if plaintiffs are correct in asserting the application of section 339, that section imposes liability on SRP for the death of Kevin Shoemaker. We conclude above that even if we accept plaintiffs' argument that section 339 is applicable, the risk-benefit analysis in section 339(d) would preclude plaintiffs from recovering from SRP under a section 339 theory. *See Bledsoe,* 170 Ariz. at 263–64, 823 P.2d at 1271–72 (" 'such conduits [are] practically impossible to render harmless' ... [and] 'are indispensable for the maintenance of life and prosperity' "). Because section 339 of the Restatement does not apply, however, SRP does not have to prove that the benefit of maintaining its canal system outweighs the risk to trespassing children.

### 5. Does *Salladay* Exempt SRP From Liability For Ordinary Negligence?

■■■ Plaintiffs argued in the trial court that factual questions about the amount of debris in the culvert and SRP's negligence in failing to install trashracks deprive SRP of immunity. We reject this argument. Because the *Salladay* doctrine is applicable, SRP's negligence in failing to install trashracks or in allowing the accumulation of debris in the culvert is not actionable.

The *Bledsoe* court observed that since *Salladay,* "our courts have expanded the doctrine to protect canal operators from attractive nuisance claims involving the maintenance of essential components of a canal system." 170 Ariz. at 264, 823 P.2d at 1272 (citations omitted). That court also remarked that in each of the cases in which the courts have protected the canal operator from liability "the child was injured by the canal itself or some device closely connected with the canal." *Id.*

■■■ Consequently, the application of the *Salladay* doctrine does not depend on the location in the canal system where the death or injury occurred or the instrumentality that ultimately caused it. In other words, the fact that the death or injury occurred in a subterranean culvert, which may even be more dangerous than the canal itself for one reason or another, is not determinative of whether the canal operator is entitled to immunity. The immunity shields SRP from the claims of all those who are injured by the canal itself or by equipment used as an essential component of the canal system. *See Salladay,* 12 Ariz. at 129, 100 P. at 442. ("There is no distinction that properly can be drawn for liability for injuries received by a child from any of such various means of diversion or use of water.").

Other decisions of our supreme court and this court support the latter conclusion. For example, in *Dombrowski,* the supreme court held that a whirlpool created by a waterfall in the canal is covered by the *Salladay* doctrine. 108 Ariz. at 277, 496 P.2d at 138. And in *Lee v. Salt River Valley Water Users' Association,* 73 Ariz. 122, 126, 238 P.2d 945, 948 (1951), the supreme court found that

weirs, or water troughs, at a canal pumping station were so similar to the canal itself as to be covered by the doctrine. *Id.*, 73 Ariz. at 126, 238 P.2d. at 948. Later, in *Elkins v. Roosevelt Water Conservation Dist.*, 22 Ariz. App. 130, 131, 524 P.2d 964, 965 (1974), this court held that because a conservation district's electrical transformer adjacent to an open trough was an essential component of the system for discharging water, it was covered by the *Salladay* doctrine.

Finally, in *Hersey*, the plaintiff, in an effort to circumvent *Salladay*, made essentially the same argument as plaintiffs make in this case. There, as a result of an automobile accident on a street adjacent to the canal, a child was thrown into the canal. She drowned in a culvert after passing through a defective trashgrate installed at the entrance to the culvert. *Hersey*, 10 Ariz.App. at 322–23, 458 P.2d at 526–27. The plaintiff argued that *Salladay* was not applicable because plaintiffs' theory of recovery was not based upon SRP's negligence in maintaining the open canal, but rather was based upon SRP's negligence in failing to install a trashrack at the entrance to the culvert where the plaintiff drowned. *Id.* at 327, 458 P.2d at 531. This court held that such distinction was not meaningful and "[t]he reasoning of *Salladay* would apply equally to the diversion facilities from the canal to the underground culvert." *Id.*

We now turn to plaintiffs' assertion that an exception to the the *Salladay* doctrine exists when the danger was temporary or unexpected, or not entirely open to observation. According to plaintiffs, *Salladay* does not "eliminate the obligation of canal operators to exercise reasonable care where the danger is hidden." Thus, plaintiffs argue, there are two disputed fact issues precluding summary judgment: first, whether SRP negligently designed and maintained the canal without "trashracks ... to render it free of debris," and second, whether SRP knew of debris clogging the culvert and negligently failed to remove it. According to plaintiffs theory, SRP's negligent failure to install trashracks and to remove debris from the lateral upstream from the Industrial Avenue culvert created an "impassable wall of debris" that prevented Kevin's body from passing through the culvert. Plaintiffs assert that because the "debris filled culvert" was an additional danger that was not open and obvious and was unexpected to the public, SRP is deprived of the *Salladay* immunity. We reject this argument for the following reasons.

First, we observe that even if SRP is not entitled to the benefit of the *Salladay* doctrine, plaintiffs' contentions, unsupported by any citation to the record, would not be sufficient to create a disputed issue of fact regarding SRP's negligence. *Brown Wholesale Elec. Co. v. Safeco Ins. Co. of America*, 135 Ariz. 154, 158, 659 P.2d 1299, 1303 (App. 1982). Furthermore, after reviewing the record, we find that plaintiffs' counsel has misrepresented the record concerning the existence of purported debris in the canal. No competent evidence exists in this record to support plaintiffs' contention that SRP allowed debris to accumulate in the canal or culvert or that an "impassable wall of debris" prevented Kevin's body from passing through the culvert.

Instead, the undisputed evidence indicates that the culvert was free of debris when the drowning occurred. Although plaintiffs argue that SRP was aware of debris in the canal and "took no action to clean" it, the affidavit of SRP employee James Duncan refutes this argument. Duncan's affidavit establishes that about one month before the accident he confirmed the removal of the dirt about which plaintiffs complain. Furthermore, the affidavits of the divers who entered the Industrial Avenue culvert establish that "the culvert was not impeded or restricted by any debris" and they were able to move freely through it. Photos taken after the culvert was emptied of water confirm this testimony; they show only a few small rocks and other debris littering the floor of the three and one-half foot culvert. Finally, the affidavit of Richard Weyenberg, the diver who retrieved Kevin's body from the culvert, states that "it did not feel to me that the child was caught up on anything in the culvert."

Second, the *Salladay* decision involved the resolution of two separate issues, neither of

which creates an *exception* to the immunity of canal operators. The first issue in *Salladay*—the issue in which the *Salladay* immunity has its genesis—dealt with the question of whether the attractive nuisance doctrine should be *extended* to a flume owned and operated by a mining company. *Salladay*, 12 Ariz. at 129, 100 P. at 442. For public policy reasons, the court refused to *extend* the holding in the "turntable case" of *Sioux City & Pacific R.R. Co. v. Stout*, 84 U.S. 657, 21 L.Ed. 745 (1874), to the facts of the *Salladay* case, thus giving birth to the so-called "*Salladay* doctrine" of tort immunity of canal operators. *Salladay*, 12 Ariz. at 129–30, 100 P. at 440.

Having refused to *extend* the holding of *Stout*, the *Salladay* court then turned to the question of whether *Stout* was controlling as precedent. Our supreme court concluded that because *Stout* represented an exception to the rule of nonliability of landowners for injuries to trespassing children, *Stout* was controlling only in the limited situation where the danger was hidden or unexpected. *Id.* at 130, 100 P. at 442–43. In other words, the *Salladay* court limited the application of the *attractive nuisance doctrine* announced in *Stout* to dangers that are "temporary or unexpected, or not entirely open to observation." *Id.* The court did not, as plaintiffs contend, create an exception to the *immunity* of a canal operator for dangers that are "temporary or unexpected, or not entirely open to observation." *Id.*

▪ Third, one of the elements of an attractive nuisance is a condition "the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children." Restatement § 339(b); *MacNeil v. Perkins*, 84 Ariz. 74, 81, 324 P.2d 211, 215–16 (1958). Thus, one cannot logically argue that the *Salladay* doctrine immunizes SRP from liability for harm caused by children attracted to its highly dangerous canal system and in the same breath argue that SRP is required to exercise reasonable care for the safety of these same children. The two concepts are mutually exclusive. Under the *Salladay* doctrine, SRP is immunized from liability for maintaining an unfenced canal and its equipment—conditions which a reasonable, prudent person would recognize as involving an unreasonable risk of harm to trespassing children. If, as plaintiffs argue, SRP must exercise reasonable care to protect children who may be attracted to its canal system, SRP could never avail itself of the protection afforded by *Salladay*.

Finally, plaintiffs' argument is refuted by *Hersey*. There, the specific act of negligence alleged against SRP was the failure " 'to properly install and maintain a grate' " at the entrance to a culvert. *Hersey*, 10 Ariz.App. at 326–27, 458 P.2d at 530–31. The *Hersey* court found both the existence of a duty to the plaintiff and foreseeability, but concluded that because of the *Salladay* doctrine, SRP's conduct in failing to install and maintain the grate was not actionable negligence. *Id.* at 327, 458 P.2d at 531. Here, the negligence alleged against SRP—the failure to "conform with usual or customary precautions in design, construction and maintenance of the canal, such as the installation of trashracks ... placement of exit steps in the lateral and cleaning ... the culvert"—is similar to the negligence alleged against SRP in *Hersey*.

Consequently, because of the *Salladay* doctrine, SRP's claimed omissions do not constitute actionable negligence. For this reason, we do not consider the claim by plaintiffs' expert that SRP negligently violated the Bureau of Reclamation Standards by failing to install trashracks, by failing to fence the canal and by failing to install cast-in-place concrete pipe as a substitute for the open lateral.

## 6. Did SRP Engage in the "Public Be Damned" Conduct Condemned by *Harris v. Buckeye Irrigation Company*, 118 Ariz. 498, 578 P.2d 177 (1978)?

▪ Plaintiffs argue that an issue of fact existed as to whether this case falls within the *Harris*, "public be damned" exception to *Salladay*. We disagree. First, we do not read *Harris* as broadly as do plaintiffs. Second, the facts of this case are distinguishable from the facts of the *Harris* case and do not fall within the rule announced in *Harris*. Consequently, we conclude that on this rec-

ord plaintiffs have not established that SRP's conduct deprived it of immunity under the *Harris* case.

## A. Does *Harris* Apply To These Facts?

*Harris* involved a makeshift footbridge constructed by Buckeye Irrigation Company ("Buckeye"). The bridge consisted of two warped and uneven boards nailed together, totalling 24-inches wide, improperly anchored and without handrails. Although the bridge was constructed by Buckeye employees and used for employee access over the canal to an irrigation checkpoint, it was also frequently used by the public as the most direct method of access from the residential area north of the canal to the high school, baseball field, and swimming pool on the south side of the canal. Several hundred children used the bridge daily to travel back and forth from their homes to the high school and ball fields. One of these children, Marlon Harris, drowned when he fell from his bicycle while attempting to cross the bridge to go to the ball field south of the canal. *Harris*, 118 Ariz. at 499–501, 578 P.2d at 178–80.

Although Buckeye knew about the public use of the bridge and was aware of prior incidents involving a drowning and a near drowning resulting from a fall from the bridge, the company exerted no effort to make the bridge safe. It erected no signs warning of the danger and took no steps to discourage public use. Furthermore, Buckeye rejected an offer by school officials to construct a safer bridge over the canal at no cost to Buckeye. Finally, and perhaps most significant, Buckeye's manager testified at his deposition that although he knew the bridge was dangerous, he had no obligation to make the bridge safe because the children were "trespassers." *Id.* at 499–502, 578 P.2d at 178–81.

The Arizona Supreme Court held that such conduct resulted in the loss of immunity. It said, "[u]nfortunately, this immunity sometimes leads to the callous 'public be damned' policy exemplified by the testimony of the manager ... in the instant case." *Id.* at 502, 578 P.2d at 181. Nevertheless, the reason for the court's ruling was clearly prophylac-

tic: to prevent irrigation companies "from using a grant of immunity as an excuse not to exercise reasonable care to protect the ... public from a negligently constructed ... bridge *they knew was being used by the public.*" *Id.* (emphasis added).

Later, after the *Harris* case was tried in the superior court and appealed, this court upheld an award of punitive damages against Buckeye for its wilful and wanton conduct. *Harris v. Buckeye Irrigation Co.,* 131 Ariz. 540, 545, 642 P.2d 885, 890 (App. 1982) ("*Harris II* "). In *Harris II*, we also observed that no Arizona case supported an immunity for wilful and wanton conduct based on the *Salladay* doctrine. *Id.* Thus, our holding in *Harris II* makes it clear that where an irrigation company engages in conduct that gives rise to an award of punitive damages, it is not entitled to immunity. On the other hand, contrary to SRP's argument, the *Harris* cases do not stand for the proposition that an irrigation company can be deprived of *Salladay* immunity *only* where its conduct rises to the level of conduct justifying an award of punitive damages.

Plaintiffs argue that *Harris* does away with immunity "where the accident could have been avoided had the canal operator exercised reasonable care and such care was not exercised because of the grant of immunity." We disagree. The immunity provided by *Salladay* would be meaningless if an irrigation company could be deprived of the immunity simply by relying upon it. Neither does *Harris* require us to reach this conclusion. The crux of *Harris* is that an irrigation company cannot acquiesce in public use of a dangerous bridge it has constructed and then, relying upon its immunity, refuse to make the bridge safe for such use.

This case is different from *Harris*. Here, no evidence exists that the public used the lateral for swimming or that any other incidents of this nature occurred at or near the culvert under Industrial Avenue. Neither is there any evidence that SRP acquiesced in public use of the lateral. On the contrary, SRP expressly prohibits swimming in its canals and laterals.

## B. Does the SRP Memorandum Demonstrate Callous Conduct?

Plaintiffs next point to an SRP memo dated October 24, 1991, to demonstrate SRP's "public be damned" conduct. In that memo, Harold Biever, an SRP employee, noted that the company's policy was to install trashracks on culverts less than 100 feet in length "'where safety considerations justify [it].'" The memo notes that this is an expensive policy and recommends that instead of installing trashracks on such culverts, SRP should "hang its hat on the legal opinion of SRP's Law Department."

Although plaintiffs argue that the memo demonstrates SRP's "public be damned attitude," we are unable to find any evidence in the memo that supports this argument. The opinion of SRP's law department referred to in Harold Biever's October 24, 1991 memo, was rendered on April 27, 1987. Although the April 27, 1987 legal opinion suggested that SRP should not, because of its immunity, install trashracks "solely for the purposes of protecting the public," that recommendation was not followed by SRP. When SRP adopted its design criteria for trashracks on July 8, 1987, it provided "[a] trashrack-headwall may be required for shorter lengths of conduit *where safety considerations justify [it] to prevent people from entering into the conduit.*" (Emphasis added.) Furthermore, Biever's recommendation, made several months after Kevin drowned, was never adopted by SRP. Thus, the July 8, 1987 policy on trashracks, which expressly acknowledged safety concerns, was in effect both before and after the drowning. Consequently, nothing in the Biever memo demonstrates that SRP engaged in conduct which, under *Harris*, would deprive SRP of immunity.

## CONCLUSION

■ We conclude that the *Salladay* doctrine is still viable to immunize canal operators from liability for trespassing children who drown in an irrigation canal. Although a canal operator who engages in "public be damned" conduct may be deprived of that immunity, we conclude that plaintiffs have not demonstrated that a triable issue of fact

exists on this point. We hold that SRP is entitled to immunity and that the trial court abused its discretion in denying SRP's motion for summary judgment.

NOYES, J., concurs.

GRANT, Judge, concurring in part; dissenting in part.

I concur in Part 1 of the majority opinion. *Ante,* p. 1169. I agree that special action relief is proper where qualified tort immunity is asserted. I also agree with Part 2 of the majority opinion that the *Salladay* doctrine continues to be a matter of judicial interpretation notwithstanding the amendment of Ariz.Rev.Stat.Ann. ("A.R.S.") section 33–1551. *Ante,* p. 1169. I also agree with the majority in Part 3 that the second motion for summary judgement did not constitute an unauthorized "horizontal appeal" and therefore should have been considered by the trial judge on its merits. *Ante,* p. 1170. It is from the remainder of the majority decision that I must respectfully dissent.

In Part 4, the majority asks: "Is the *Salladay* Doctrine Still Viable in Arizona?" I agree that the *Salladay* doctrine still has a place in Arizona jurisprudence. I disagree with the majority's application of *Salladay* to the facts of this case. The doctrine remains a viable defense to suits against an irrigation company for death or injuries to one falling into a canal or waterway without more. That is the nexus of the original decision in *Salladay v. Old Dominion Copper Mining Co.,* 12 Ariz. 124, 100 P. 441 (1909).

However, this case involves more than just the attractive nuisance of a waterway such as the lateral involved. In this case an inherently dangerous and hidden condition was created by Salt River Valley Water Users Association ("SRP") when it installed the culvert and did not take known and reasonable safety precautions to protect children. I would hold that these facts preclude summary judgment for SRP as they take the situation out of the *Salladay* doctrine into an area of disputed facts which must be submitted to the trier of fact to determine whether SRP was negligent. *Orme Sch. v. Reeves,* 166 Ariz. 301, 802 P.2d 1000 (1990).

## BASIS FOR SALLADAY

In 1909 our supreme court determined the applicability of the relatively new "turntable doctrine" when it issued the *Salladay* opinion. The "turntable doctrine" was a still evolving exception to the rule of landowner non-liability to trespassers "for the visible condition of his premises." *Salladay*, 12 Ariz. at 130, 100 P. at 443. The facts presented by *Salladay*, well described in the majority opinion, set forth the issue whether the "turntable doctrine" should apply in a case of "patent and visible alluring dangers." *Id.* at 129, 100 P. at 442.

The supreme court did not consider whether the "turntable doctrine" should extend to cases involving latent or hidden dangers. *Id.* The *Salladay* court refused to extend the doctrine to the visible dangers of canals largely for two reasons: 1) the public utility of flumes and irrigation ditches in an arid land and the great burden of making them harmless made liability for accidents in such flumes contrary to public policy; and 2) children old enough to be let out on their own can be presumed to appreciate the danger of open waterways. *Salladay*, 12 Ariz. at 130–31, 100 P. at 443; *see* William L. Prosser, *Trespassing Children*, 47 Cal.L.Rev. 427, 459 (1959).

These considerations applied in cases of patent and visible dangers are still viable today. But the law of attractive nuisance evolved beyond the static application of turn-of-the-century policies as portrayed in the majority's opinion.

## ARIZONA LAW SINCE SALLADAY

In *Dombrowski v. Maricopa County Mun. Water Conservation Dist.*, our supreme court stated that a "meaningful distinction" may exist between the open canal in *Salladay* and the danger of negligent design and maintenance of a canal located in an urban area. 108 Ariz. 275, 277, 496 P.2d 136, 138 (1972). While the facts in *Dombrowski* did not present the court with the opportunity to establish a framework for evaluating an irrigation company's duty to trespassing children, the facts at bar compel establishing such a framework.

The development of the *Salladay* doctrine has generally proceeded along two tracks; one upholding immunity from the attractive nuisance doctrine for open canals, waterways and power lines: *Dombrowski*, 108 Ariz. 275, 496 P.2d 136; *Lee v. Salt River Valley Water Users' Ass'n*, 73 Ariz. 122, 238 P.2d 945 (1951); the other finding exceptions to or narrowing *Salladay*: *Harris v. Buckeye Irrigation Co.*, 118 Ariz. 498, 578 P.2d 177 (1978); *Partin v. Olney*, 121 Ariz. 448, 591 P.2d 74 (App.1978); *Clarke v. Edging*, 20 Ariz.App. 267, 512 P.2d 30 (1973). Only this court's ruling in *Hersey* expanded the *Salladay* doctrine. *Hersey v. Salt River Valley Water Users' Ass'n*, 10 Ariz.App. 321, 458 P.2d 525 (1969). In *Hersey* a seven year old girl was thrown into a canal as the result of an intersection traffic accident which caused her to be ejected from the vehicle in which she was riding. As she tried to climb up the side of the canal the force of the current sucked her into a culvert partially covered by an improperly maintained trashrack. *Hersey* is a dangerous instrumentality along a roadway case, not an attractive nuisance doctrine case. The *Hersey* court's reliance on *Salladay* was therefore improper.

## DEVELOPMENT OF RESTATEMENT SECTION 339

The general rule of land owner liability has been that the owner owes no duty to trespassers except to neither wilfully nor intentionally inflict injury on them. *Buckeye Irrigation Co. v. Askren*, 45 Ariz. 566, 573, 46 P.2d 1068, 1070 (1935).

The "turntable doctrine" discussed in *Salladay* became known as the attractive nuisance doctrine. The attractive nuisance doctrine rested on the idea that although landowners were generally not liable for injuries to trespassers, they had a duty to children who were drawn to the property by some visible attraction. Initially, courts were reluctant to broadly apply the fiction that children were lured to trespass like fish to bait, *United Zinc & Chem. Co. v. Britt*, 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615 (1922), and limited application of the attractive nuisance doctrine to cases where the child was attracted by the instrument of his injury. *Salt*

*River Valley Water Users' Ass'n v. Compton*, 40 Ariz. 282, 289, 11 P.2d 839 (1932) (and cases therein). The supreme courts of both the United States, *Best v. District of Columbia*, 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882 (1934), and Arizona, *MacNeil v. Perkins*, 84 Ariz. 74, 324 P.2d 211 (1958), later abandoned this restriction and expanded landowners' duties to trespassing children.

The most significant step in the evolution of the attractive nuisance doctrine was the adoption of section 339 of the Restatement of Torts (1934). In what Prosser and Keaton described as one of the Restatement's most effective sections, the drafters provided a framework for deciding a landowner's liability for physical harm to trespassing children. W. Prosser & W. Keaton, *The Law of Torts* § 59 (5th ed. 1984). The Restatement approach moved away from special exemptions from liability toward application of general negligence principles. *Id.* Such special exemptions were described as "probably a vestigial trace of landowner's special privileges, not destined to endure long." Flemming James, Jr., *Tort Liability of Occupiers of Land: Duties Owed to Trespassers*, 63 Yale L.J. 144, 170 (1953).

Arizona adopted section 339 of the Restatement of Torts in *Buckeye Irrigation Co. v. Askren*, 45 Ariz. 566, 46 P.2d 1068 (1935), and has since adopted section 339 of the Restatement (Second) of Torts. *Spur Feeding Co. v. Fernandez*, 106 Ariz. 143, 472 P.2d 12 (1970); *Brown v. Arizona Public Serv. Co.*, 164 Ariz. 4, 790 P.2d 290 (App.1990); *Clarke*, 20 Ariz.App. 267, 512 P.2d 30; *Giacona v. Tapley*, 5 Ariz.App. 494, 428 P.2d 439 (1967).

By the time of the first Restatement, many states had already established the general non-applicability of the attractive nuisance doctrine to bodies of water. M.C. Dransfield, Annotation, *Liability of Landowner for Drowning of Child*, 8 A.L.R.2d 1254, 1262 (1949) (and cases cited therein). But this non-liability rule broke down where part of the danger was concealed, such as in the case of a deep hole in a muddy and apparently shallow pool. Prosser, *Trespassing Children*, 47 Cal.L.Rev. at 459.

This hidden danger element within an attractive nuisance problem was addressed by the drafters of the Restatement (Second).

There are many dangers, such as ... water ... which under ordinary conditions may reasonably be expected to be fully understood and appreciated by any child of an age to be allowed at large. To such conditions the rule stated in the Section ordinarily has no application, in the absence of some other factor creating a special risk that the child will not avoid the danger, such as the fact that the condition is so hidden as not to be readily visible....

Restatement (Second) of Torts § 339 cmt. j (1965). This liability rule expressed in Comment j has been widely accepted in other jurisdictions. *E.g., Reynolds v. Willson*, 51 Cal.2d 94, 331 P.2d 48 (1958) (holding that where the existence of a trap is shown recovery will be awarded); *Kinya v. Lifter, Inc.*, 489 So.2d 92 (Fla.App.1986); *Pasierb v. Hanover Park Park Dist.*, 103 Ill.App.3d 806, 59 Ill.Dec. 461, 431 N.E.2d 1218 (1981); *Leary v. City of Boston*, 20 Mass.App. 605, 481 N.E.2d 1184 (1985); *Limberhand v. Big Ditch Co.*, 218 Mont. 132, 706 P.2d 491 (1985) (imposing liability where there is in or about the artificial stream some peculiar danger, in the nature of a hidden peril or trap for the unwary); *Lohrenz v. Lane*, 787 P.2d 1274 (Okla.1990); *Pratt v. Mitchell Hollow Irrigation Co.*, 813 P.2d 1169 (Utah 1991); *Ochampaugh v. City of Seattle*, 91 Wash.2d 514, 588 P.2d 1351 (1979) (holding that the attractive nuisance doctrine will not apply to bodies of water "having natural characteristics and no hidden dangers not ordinarily found in such bodies of water").

Of particular interest is the development of the law of attractive nuisance as applied to canals in our sister state of Utah. As cited by the majority, Utah has recognized the policy considerations underpinning the *Salladay* decision. *Pratt*, 813 P.2d 1169; *Loveland v. Orem City Corp.*, 746 P.2d 763 (Utah 1987); *Charvoz v. Salt Lake City*, 42 Utah 455, 131 P. 901 (1913).

Beginning with *Charvoz* in 1913, Utah expressly followed the *Salladay* doctrine in both reasoning and effect. *Charvoz*, 131 P. at 906–07. Utah reaffirmed *Charvoz* on a

number of occasions stating the rule as broadly as: the "owners/possessors of canals are not subject to liability under attractive nuisance doctrine." *Loveland*, 746 P.2d at 772. But like our supreme court in *Salladay*, Utah left open the possibility of extending the attractive nuisance doctrine to artificial bodies of water with hidden dangers. *Weber v. Springville City*, 725 P.2d 1360, 1366 (Utah 1986). And similar to this court's ruling in *Clarke*, Utah noted the possibility that the attractive nuisance doctrine could be imposed on landowners for "harms resulting from dangers that are not inherent in the very existence of canals and trenches." *Trujillo v. Brighton–North Point Irrigation Co.*, 746 P.2d 780, 783 n. 4 (Utah 1987). The dissent in *Loveland*, written by Justice Durham, rejected the notion that the factual basis in *Charvoz* was still valid, and argued instead that the irrigation company should have the burden of proving the economic necessities of their canals. *Loveland*, 746 P.2d at 780 (Durham, J., dissenting).

Most importantly, just four years after deciding *Loveland* and *Trujillo*, the Utah supreme court stated that "the attractive nuisance doctrine ... is applicable where there are some hidden dangers or traps not ordinarily present in a body of water." *Pratt*, 813 P.2d at 1173. However, the Utah court refused to recognize the mere existence of a culvert without a trashrack as a hidden danger. *Id.* The court did say that the existence of a hidden trap or peril is an exception to the general immunity available to owners of canals and waterways. *Id.* The Utah court would not speculate as to what would constitute a hidden peril or trap. *Id.*

Given Arizona's adoption of the Restatement (Second) of Torts section 339 as a general rule, the wide acceptance of the rule stated in comment j relating to bodies of water, and the need to establish a clear and consistent means of distinguishing between the dangers of open canals or waterways and the dangers of negligently designed or maintained diversion points and equipment, I would hold owners and operators of canals liable for harm to trespassing children where there exist artificial or manufactured hidden traps or dangers not ordinarily present in a natural body of water provided that the other elements of section 339 are also met. The issue of duty is usually one for the court as a matter of law. *Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985). Once the landowner's duty is established, it becomes a question of fact for the jury whether there exists a hidden peril or concealed danger. *Shaw v. Petersen*, 169 Ariz. 559, 821 P.2d 220 (1991); *Downey v. Lackey*, 11 Ariz.App. 528, 466 P.2d 401 (1970).

In the case at bar, plaintiff alleges that the canal ran from a relatively shallow depth into a pool with a sudden drop. Near the bottom of the pool was the entrance to the culvert that may have created a hidden sucking action dangerous to children, that also reduced or eliminated the chance of rescue. Courts in other jurisdictions have ruled that either of these factors can overcome the presumption of non-liability for owners of watercourses. *E.g.*, *Ansin v. Thurston*, 98 So.2d 87 (Fla.App.1957) (sudden drop); *Bjork v. City of Tacoma*, 76 Wash. 225, 135 P. 1005 (1913) (distinguishing an enclosed flume from the open flume in *Salladay* and imposing liability due to lost chance of rescue). The record indicates that once Kevin Shoemaker was sucked into the culvert it took two scuba rescue firemen over twenty minutes to find his body. Even if a person with scuba diving gear had been present when the accident occurred, the fact that it took three attempts to find Kevin's body indicates that any reasonable chance of rescue was eliminated by the design and maintenance of the culvert.

The facts in the record before us establish a genuine issue of material fact and preclude summary judgement. I recognize that the Utah supreme court in *Pratt* took the opposite view about the nature of an ungrated culvert as a hidden trap. However, the record in the case at bar is far more extensive than the record appeared to be in *Pratt*. The Utah court clearly supports the principle of law that I urge but it would not say to what facts it should be applied. However, our supreme court's statement in *Dombrowski* about the distinction between open canals and negligent design and maintenance creates a question of application that should be

answered with regard to the facts in this case. I believe exception from immunity is properly applicable here where the death of the child is caused by a hidden and dangerous condition manufactured or constructed by the defendant which trapped the child and destroyed any chance for his rescue.

I must also disagree with the majority's conclusion that the burden of eliminating the danger in this case outweighs the risk to trespassing children. The majority's risk/utility analysis improperly considers the cost of eliminating the danger in all of the Salt River Project's more than 1000 miles of canals. Imposing liability only in the case of artificial hidden traps greatly reduces the potential cost of eliminating the risks. SRP has not proved, as a matter of law, that the risk to Kevin Shoemaker and other children is outweighed by the $1,000 expense of installing a trashrack on a culvert of less than 100 feet. SRP has installed some trashracks on some of these culverts, but, unfortunately, not all. SRP has not shown that the burden of reasonable efforts to eliminate or ameliorate the danger of the hidden trap outweighs the risk to children as a matter of law. *See Loveland,* 746 P.2d 763 (Utah) (Durham, J., dissenting); *Trujillo,* 746 P.2d 780 (Utah) (Durham, J., dissenting); *see also Markiewicz v. Salt River Valley Water Users' Ass'n,* 118 Ariz. 329, 576 P.2d 517 (App.1978).

### CONCLUSION

This rule of liability for canal operators maintains the immunity for open and visible dangers of the waterways themselves as established under *Salladay,* but imposes liability for artificial or manufactured hidden traps and dangers not ordinarily present in a natural body of water. Here the hidden and inherently dangerous condition created by the underwater, unscreened culvert presents a genuine issue of material fact that precludes summary judgment. I would deny relief and remand the case for trial.